UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:19-CV-00033-GNS

JESSICA GOSSOM,
as Administratrix of the Estate
of Joshua Shimkus, Deceased, and as
Next-Friend of A.S. and M.S., minors                                   PLAINTIFF

v.

UNION PACIFIC RAILROAD COMPANY;
LEXAIR, INC.;
PROGRESS RAIL SERVICES CORPORATION;
WILLIAMS PLANT SERVICES, LLC;
WORLEYPARSONS GROUP;
TENNESSEE VALLEY AUTHORITY;
THOMAS WEATHERBY;
BRIAN KIRK EGNER; and
AESOME ENERGY & CONSTRUCTION, INC.                                     DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Motions to Dismiss filed by Defendants Tennessee Valley Authority ("TVA"), Thomas Weatherby ("Weatherby"), and Brian Kirk Egner ("Egner") (DN 10), and Defendant Progress Rail Services Corporation ("Progress") (DN 53), Progress' Motion to Strike (DN 68), and Plaintiff's Motion for Leave to File Belated Response (DN 71). The motions are ripe for adjudication. For the reasons provided below, the motions to dismiss and the motion for leave are **GRANTED**, and the motion to strike is **DENIED AS MOOT**.

### I.     BACKGROUND

Decedent Joshua Shimkus ("Shimkus") was employed as a laborer by a contractor performing work for TVA in Kentucky. (Compl. ¶ 21, DN 1-1). Plaintiff Jessica Gossom

("Plaintiff") is Shimkus' former spouse, the administratix of his estate and the mother of his two minor children, A.S. and M.S. (Compl. ¶¶ 1-2).

On December 10, 2017, Shimkus was operating a vacuum truck as part of a crew cleaning up a derailment and coal spill after the hopper doors on one of the railcars had opened. (Compl. ¶¶ 24, 28). Plaintiff alleges Progress had inspected the rail car prior to the derailment. (Compl. ¶ 25). Plaintiff further alleges Weatherby and Egner were also involved in this clean-up. (Compl. ¶ 25).

As part of the clean-up, Shimkus had to go beneath the railcar with a vacuum hose from his truck. (Compl. ¶ 27). While underneath the car and between the open hopper doors, Weatherby allegedly directed Egner to activate the pneumatic valve and close the hopper doors which caught and crushed Shimkus, causing his death. (Compl. ¶¶ 27, 29).

Plaintiff has asserted several claims stemming from this tragic incident. Relevant to the present motions, Plaintiff first asserts claims for negligence against Weatherby and Egner for failing to exercise reasonable care in operating the pneumatic valve controlling the hopper doors. (Compl. ¶¶ 34-39). Plaintiff also asserts negligence claims against TVA, both directly and under a theory of *respondeat superior*, and against Progress for its alleged failure to properly inspect the rail car. (Compl. ¶¶ ¶¶ 40-47, 96-100). Plaintiff further contends Progress breached its duty by failing to provide Shimkus' direct employer with "adequate and necessary advice, guidance, policies, procedures, tools, equipment, safety budget and other resources for purposes of enabling [Shimkus' employer] to safely conduct[] its operations and tasks." (Compl. ¶ 106).

TVA moved to dismiss the claims asserted against Weatherby and Egner in this case because they were acting within the scope of their employment with TVA at the time of the incident, so they are precluded from suit under 16 U.S.C. § 831c-2. (Def.'s Mem. Supp. Mot.

Dismiss 1-2, DN 10-2). Plaintiff does not appear to dispute that Weatherby's and Egner's dismissal is appropriate, but requests the Court to do so without prejudice. (Pl.'s Resp. Def.'s Mot. Dismiss 1-3). TVA responded to state that it does not oppose dismissing Weatherby and Egner without prejudice. (Def.'s Reply Mot. Dismiss 4, DN 59).

On April 3, 2019, Progress moved to dismiss the claims asserted against it arguing that this Court lacks personal jurisdiction over Plaintiff's claims against it because its allegedly negligent inspection of the railcar occurred in February 2017 in Alliance, Nebraska—approximately nine months before the incident at issue in this case. (Def.'s Mem. Supp. Mot. Dismiss 2, DN 53-1). In response, Plaintiff contends that this Court has personal jurisdiction over Progress because "[t]here is a reasonable and direct nexus between those acts and omissions" and the injury occurring in Kentucky.[1] (Pl.'s Resp. Def.'s Motion Dismiss 5, DN 66). Progress then moved to strike Plaintiff's Response as violating Local Rule 7.1(c) for being filed more than 21 days after she received service of Progress' Motion to Dismiss. (Def.'s Mem. Supp. Mot. Strike 1, DN 68-1). In responding to Progress' Motion to Strike, Plaintiff attributes her tardiness to "inadvertence." (Pl.'s Mot. Leave File Resp. 1, DN 71).

## II. DISCUSSION

### A. TVA's Motion to Dismiss Weatherby and Egner

TVA is an executive branch corporate agency and instrumentality created by and existing pursuant to the TVA Act of 1933. *TVA v. Hill*, 437 U.S. 153, 157 (1978). Because TVA is an executive branch agency of the United States, its employees are considered federal employees. *See Jones v. TVA*, 948 F.2d 258, 262 (6th Cir. 1991) (citation omitted). As such, TVA employees

---

[1] Plaintiff has moved for leave to file a belated response to Progress' motion, and Progress has moved to strike Plaintiff's response. (Pl.'s Mot. Leave File Belated Resp., DN 71; Def.'s Mot. Strike, DN 68). The Court will grant Plaintiff's motion but deny Progress' motion.

3

are entitled to the same immunity from tort suits as other federal employees. *United States v. Smith*, 499 U.S. 160, 169 (1991); 16 U.S.C. § 831c-2; 28 U.S.C. § 2679(b)-(d).

The Federal Employees Liability Reform and Tort Compensation Act of 1988 ("FELRTCA") provides that, except for claims of constitutional torts, an action against TVA "is ex[c]lusive" and precludes any action against a TVA employee based upon the employee's alleged "negligent or wrongful act or omission" while acting within the scope of his or her TVA employment. 16 U.S.C. § 831c-2(a)(1)-(2). When TVA certifies that a "defendant employee was acting within the scope of his . . . employment at the time of the incident out of which the claim arose," the action against the employee "shall be deemed an action against the [TVA] . . . and the [TVA] shall be substituted as the party defendant." *Id*. § 831c-2(b)(1). "Any other civil action or proceeding arising out of or relating to the subject matter against the employee . . . is precluded without regard to when the act or omission occurred." *Id*. § 831c-2(a)(1). Moreover, cases applying relevant provision of the FELRTCA conclude that non-constitutional tort against a TVA employee based on acts or omissions within the scope of their employment with TVA are precluded and must be dismissed. *See Mulcahy v. Fields*, No. 5:07CV-39-R, 2007 WL 4119040, at *1 (W.D. Ky Nov. 14, 2007) (substituting TVA as a party defendant on claims lodged against individually named defendant).

TVA attaches a certification attesting that Weatherby and Egner were acting within the scope of their employment with TVA at the time the incident in this case occurred. (Defs.' Mot. Dismiss Ex. 1, DN 10-1). This certification is conclusive. 16 U.S.C. § 831c-2(b)(1).Plaintiff does not dispute that the FELRTCA instructs the Court to name TVA as defendant in Weatherby and Egner's place, so the Court will grant TVA's Motion and dismiss Weatherby and Egner as parties to this case.

Plaintiff requests the Court dismiss her claims against Weatherby and Egner without prejudice because discovery has not yet occurred, and it would be "premature" to exonerate Weatherby and Egner when further information might come out in discovery relating to their work with other Defendants in this case. (Pl.'s Resp. Defs.' Mot. Dismiss 2, DN 36). Plaintiff further contends that Weatherby and Egner's interests would be protected if the Court dismissed without prejudice because any final judgment for or against TVA would act as a complete bar to any further action against them individually. (Pl.'s Resp. Defs.' Mot. Dismiss 2). On this topic, TVA does not take issue with Plaintiff's request and cites several cases demonstrating that courts are not consistent in dismissing parties under the FELRTCA with or without prejudice. (Defs.' Reply Mot. Dismiss 3, DN 59). Because the parties do not dispute dismissing Plaintiff's claims against Weatherby and Egner without prejudice would be appropriate, the Court will accordingly grant TVA's Motion and dismiss Plaintiff's claims against Weatherby and Egner without prejudice.

### B.   **Progress' Motion to Dismiss for Lack of Personal Jurisdiction**

Progress contends the Court lacks personal jurisdiction over the claims against it because all of its allegedly negligent activity occurred in Nebraska about nine months before the incident at issue in this case. (Def.'s Mem. Supp. Mot. Dismiss 2, DN 53-1). Under Fed. R. Civ. P. 12(b)(2), a litigant may challenge the Court's authority to entertain for an action for lack of personal jurisdiction." *See* Fed. R. Civ. P. 12(b)(2). Personal jurisdiction has two forms: general and specific. *See Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 678-79 (6th Cir. 2012). General jurisdiction arises when a defendant has affiliations so "continuous and systematic" with a forum as to render it "essentially at home" there, thus allowing courts in that forum to exercise jurisdiction

over any and all claims against it.[2] *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citation omitted). Specific jurisdiction, on the other hand, arises from "minimum contacts" between a person and the forum, and permits the forum's courts to adjudicate "issues deriving from, or connected with," those particular contacts. *Id.* (citation omitted). When a court rules on a jurisdictional motion to dismiss, without conducting an evidentiary hearing, it must consider the pleadings and affidavits in a light most favorable to the plaintiff. To defeat such a motion, the plaintiff need only make a *prima facie* showing of jurisdiction and the court should

---

[2] The Court notes that Gossom makes no allegation that the Court possesses general jurisdiction over Progress. The Supreme Court has "made clear that only a limited set of affiliations with a forum will render a defendant amendable to all-purpose [i.e. general] jurisdiction there." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). For a corporation, "the paradigm forum for the exercise of general jurisdiction is . . . one in which the corporation is fairly regarded as at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) (citation omitted). "With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'" *Daimler*, 571 U.S. 117 at 137 (citation omitted). Importantly, "*Goodyear* did not hold that a corporation may be subject to general jurisdiction *only* in a forum where it is incorporated or has its principal place of business; it simply typed those places paradigm all-purpose forums." *Id*. The Supreme Court elaborated on this concept in *Daimler*:

> [T]he words "continuous and systematic" were used in *International Shoe* to describe instances in which the exercise of *specific* jurisdiction would be appropriate. Turning to all-purpose [(i.e., general)] jurisdiction, in contrast, *International Shoe* speaks of "instances in which the continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit . . . *on causes of action arising from dealings entirely distinct from those activities*." Accordingly, the inquiry under *Goodyear* is not whether a foreign corporation's in-forum contacts can be said to be in some sense "continuous and systematic," it is whether that corporation's affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State."

*Daimler*, 571 U.S. at 138-39 (emphasis in original) (internal citations omitted) (citation omitted). In the case *sub judice*, Gossom has made no allegation that general personal jurisdiction applies to place Progress within the reach of this Court. Rather, Gossom argues that the Court possesses specific jurisdiction over this nonresident defendant, and there appears to be insufficient proof in the record to support this Court's exercise of general jurisdiction over Progress.

not weigh the controverting assertions of the party seeking dismissal. *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998).

In determining whether personal jurisdiction exists over a nonresident defendant, the Court must apply the law of the state in which it sits. *Third Nat'l Bank in Nashville v. WEDGE Grp. Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989). In Kentucky, jurisdiction over out-of-state defendants is governed by KRS 454.210. In *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51 (Ky. 2011), the Kentucky Supreme Court provided that "[o]nly after the requirements of KRS 454.210 have been satisfied can it be said that personal jurisdiction over a non-resident defendant extends to the outer limits permitted by federal due process." *Id*. at 57. It created a two-step process to apply proper long-arm jurisdiction:

> First, review must proceed under KRS 454.210 to determine if the cause of action arises from conduct or activity of the defendant that fits into one of the statute's enumerated categories. If not, then *in personam* jurisdiction may not be exercised. When the initial step results in a determination that the statute is applicable, a second step of analysis must be taken to determine if exercising personal jurisdiction over the non-resident defendant offends his federal due process rights.

*Id*. The Kentucky Supreme Court continued, "[w]hile we believe it fair to say that these provisions should be liberally construed in favor of long-arm jurisdiction, their limits upon jurisdiction must be observed as defined." *Id*. at 56. In light of this, the Court must first determine which long-arm statute provision applies here before considering minimum contacts and personal availment. *See id*.

Of the nine enumerated categories in KRS 454.210(2)(a), Plaintiff's claims could potentially fall under the fourth category, which provides for jurisdiction over nonresident parties:

> Causing tortious injury in this Commonwealth by act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, *provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of*

7

> *business or a persistent course of conduct or derivation of substantial revenue within the Commonwealth . . . .*

KRS 454.210(2)(a)(4) (emphasis added).

The Complaint alleges Progress failed to exercise reasonable care in inspecting the railcar involved in this accident and to remove it from service, which proximately resulted in Shimkus' death. (Compl. ¶¶ 97-100). Progress contends that this alleged negligence occurred in Alliance, Nebraska; and while Progress does conduct regular business in Kentucky, the accident here occurred completely untethered to any of its operations in the Commonwealth. (Def.'s Mem. Supp. Mot. Dismiss 2).

While Progress' out-of-state conduct is alleged to have resulted in tortious injury in Kentucky and Progress admits it engages in regular business in the Commonwealth, none of the claims here "arise" from those Kentucky contacts. *Auto Channel, Inc. v. Speedvision Network*, 995 F. Supp. 761, 765 (W.D. Ky. 1997) ("Even if there were facts sufficient to support the inference that Defendants conducted or solicited business in Kentucky, or derived significant revenue from services rendered in the state, Plaintiffs must show that those injuries 'arose out of' these activities, as required by K.R.S. 454.210(2)(a)4."); *Caesars Riverboat*, 336 S.W.3d at 59 (explaining there must be a "reasonable and direct nexus" between defendant's conduct in Kentucky and the negligent act that produced plaintiff's injury). Plaintiff counters that Progress' Kentucky facilities are also used for inspecting, repairing, and maintaining railcars. (Pl.'s Resp. Def.'s Mot. Dismiss 5). Those Kentucky-based business activities, however, were not the source of injuries suffered here when the alleged negligence occurred in Nebraska several months before the railcar entered Kentucky. *See Caesars Riverboat*, 336 S.W.3d at 58. Plaintiff also contends Progress' contractual relationship with TVA and its operations in Kentucky support finding personal jurisdiction. (Pl.'s Resp. Def.'s Mot. Dismiss 5-6). As the Sixth Circuit has noted,

however, "the mere existence of a contract . . . is insufficient to confer personal jurisdiction . . . ." *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 722 (6th Cir. 2000) (citation omitted).

Because the Court finds that Plaintiff's claims do not arise out of Progress' contacts with Kentucky, it need not analyze whether exercising jurisdiction would comport with federal due process. *Cox v. Koninklijke Philips, N.V.*, 647 F. App'x 625, 628 (6th Cir. 2016) ("Kentucky's long-arm statute is narrower in scope than the federal due process clause . . . ." (citation omitted)). Accordingly, Plaintiff's claims against Progress will be dismissed for lack of personal jurisdiction.

### III.     CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1.     Defendant TVA's Motion to Dismiss (DN 10) is **GRANTED**, and claims asserted against Defendants Thomas Weatherby and Brian Kirk Egner will be **DISMISSED WITHOUT PREJUDICE.**

2.     Defendant Progress' Motion to Dismiss for Lack of Personal Jurisdiction (DN 53) is **GRANTED**, and Plaintiff's claims against Progress are **DISMISSED WITHOUT PREJUDICE**.

3.     Plaintiff's Motion for Leave to File Belated Response (DN 71) is **GRANTED**.

4.     Defendant Progress' Motion to Strike (DN 68) is **DENIED AS MOOT**.

Greg N. Stivers, Chief Judge
United States District Court

September 3, 2019

cc:     counsel of record